## MATTHEWS *vs.* COE.

Warehouse receipts for corn were pledged by L. to the defendant for a loan of money, at a usurious rate of interest, the form of a consignment to the defendant of the corn covered by the receipts being resorted to as a cover for the usury. *Held* that the plaintiff, assignee of L., could avail himself of the usury between L. and the defendant, in an action brought for the conversion of the corn ; L. having, previous to the assignment of the claim to the plaintiff, repudiated the transaction by commencing an action against the defendant for the recovery of the warehouse receipts, claiming that they should be returned to him freed from any claim on the part of the defendant for the money advanced upon the usurious agreement.

*Held* also, that the fact that the corn had been *sold* by the defendant was no defense to the action, in the absence of any proof that such sale was with the consent of the plaintiff or his assignor.

In an action to recover damages for the conversion of goods, the rule of damages is the highest value of the property at any time between the conversion and the day of trial.

Where there is conflicting testimony, on a trial before a referee, the referee must be presumed to have found, from all the evidence, the facts which are necessary to sustain his legal conclusions.

APPEAL by the defendant from a judgment entered upon the report of a referee.

This action was brought March 2, 1866, by Simeon Losee, against the defendant, for damages for the conversion of warehouse receipts representing title to seventy thousand bushels of western mixed corn, in store at Brooklyn, which receipts had been deposited by Losee with Coe as collateral security for a loan of money, upon the agreement that Losee was to pay for the use of the money advanced, 2½ *per cent every sixty days, and interest at the rate of seven per cent per annum.* On the 13th March, Losee assigned to Matthews all of his interest in the warehouse receipts, in payment of an antecedent debt, amounting to the sum of $25,000 ; afterwards Matthews *tendered to the defendant* $60,000, *and demanded a return of the warehouse receipts.* But the defendant refused to deliver, alleging that he had sold the corn. Matthews was substituted as plaintiff in the action on the 11th of February, 1868, by

Matthews *v.* Coe.

consent of the defendant.   On the 23d of April, 1868, the
cause was referred, by order of this court, to E. S. Cald-
well, Esq., to hear and determine the same; who, after
hearing the proofs and allegations of the parties, rendered
his decision, and made his report, by which he found that
on the 15th day of August, 1865, and at the several dates
mentioned in the complaint, Charles A. Coe, the defend-
ant, loaned Simeon S. Losee the sums of money mentioned
in the complaint, and the condition of said loans was that
Losee should pay Coe interest on the amount of money
advanced, at the rate of seven per cent per annum, and two
and one half per cent in addition thereto every sixty days,
during the continuance of the loans; and that as security
for the repayment of the money, Losee deposited with Coe
the several warehouse receipts mentioned in the complaint,
which said receipts represented seventy thousand eight
hundred and fifty-six bushels of western mixed corn.   That
on the 20th day of October, 1865, Losee paid Coe the in-
terest, at the rate of seven per cent per annum, and two
and a half per cent in addition, amounting to $1612.80, by
way of extra interest for the money loaned by Coe in
August, 1865; and that on the 20th day of December,
1865, Losee again paid Coe his interest at the rate of seven
per cent, and two and a half per cent as additional com-
pensation for the loan, amounting to 1700.69, and that Coe
again charged it to Losee on the 20th day of February,
1866.   That the consignment of the corn by Losee to Coe
at the time of the making of the loan, was for the purpose
of evading the statute regulating the rate of interest on
money.   That on the 20th day of March, 1866, western
mixed corn sold in the market for eighty cents per bushel;
on the 7th day of January, 1867, it sold at $1.21½ per
bushe¹; on the 14th day of January, 1867, it sold at $1.12
per bushel; and that on the 10th day of October, 1867, it
was worth and sold for $1.45 per bushel.   That on the 2d
day of March, 1866, and before this action was commenced,

Losee demanded of Coe the warehouse receipts mentioned in the complaint, and Coe refused to return them to him. That this suit was commenced by Losee, as plaintiff, on the 2d day of March, 1866; that the complaint was amended April 20, 1868, and that by stipulation of parties, Charles Matthews was substituted as plaintiff herein on the 11th day of February, 1868, and a supplemental summons and complaint served February 14, 1868. That Coe was in possession of the warehouse receipts after the complaint was served, and that Matthews tendered him the sum of sixty thousand dollars, and demanded possession of the receipts, which Coe refused. That Coe never demanded a return of the money loaned, or gave notice of sale to either Losee or Matthews, at or before the sale of the corn mentioned in the warehouse receipts. That Losee, on the 13th of March, 1866, by an instrument in writing and under seal, assigned to Matthews, the plaintiff herein, for a valuable consideration, all of his interest in the warehouse receipts held by Coe, and mentioned in the complaint herein. That on the 6th day of November, Matthews notified Coe that he held an assignment of all Losee's interest in the aforesaid warehouse receipts. That Losee afterwards, and on the 9th day of November, 1867, executed a general release to Coe, of all claims which he had against him. That the defendant did convert and dispose of the property in the complaint mentioned, as therein alleged, and that the plaintiff by reason of the matters in the said complaint stated and alleged, has sustained damage in the amount of one hundred thousand dollars.

The referee found, as conclusions of law: *First.* That the contract between Coe and Losee was void, the same being in contravention of the statute regulating the rate of interest on money. *Second.* That Matthews, as assignee of Losee, was entitled to damages in the highest value of the corn down to day of trial. *Third.* That the notice of assignment by Matthews to Coe was a sufficient notice.

Matthews *v.* Coe.

*Fourth.* That the assignment to Matthews was valid, and carried all of Losee's interest in the warehouse receipts to him. *Fifth.* That the plaintiff Charles Matthews was entitled to judgment against the defendant Charles A. Coe in the sum of one hundred thousand dollars, together with the costs of this action; and he directed judgment to be entered accordingly.

*Mills & Cochran,* for the appellant.

I. This action could not legally be maintained by Charles Matthews, as the assignee of Losee, and the right of the borrower Losee to avoid the securities for the advances of the defendant to him, upon the ground of usury in the agreement between them, was not assignable. Matthews, as the attorney of Losee, commenced the original action March 2, 1866, and on the 13th March, 1866, took from Losee in payment of doubtful precedent claims an assignment (kept concealed until after the close of negotiations for settlement of the action between Losee and the defendant) of Losee's "right, title and interest in and to a certain claim which I have against Charles A. Coe, and for which I have brought suit for the recovery of warehouse receipts pledged to him for money loaned upon seventy thousand bushels of corn stored in the city of Brooklyn." This was not a bill of sale of the corn, entire, or subject to the lien of the defendant, but a simple assignment of the right of action on the part of Losee, the borrower, to avoid the securities held by the defendant for his advances to him by reason of the alleged usury in the agreement by which such advances were made and such securities given, according to the then frame of the complaint of Losee in the pending "suit" against Coe. The subject of this attempted assignment was no more assignable than a right of action for assault and battery, seduction or *crim con.* This proposition is abundantly sustained by the following authorities and

many others. (*Ohio and Miss. Railroad Co.* v. *Kasson,* 37 *N. Y. Rep.* 218, 224. *Williams* v. *Tilt,* 36 *id.* 319, 326. *Sands* v. *Church,* 2 *Seld.* 347. *Billington* v. *Wagoner,* 33 *N. Y. Rep.* 31. *Bullard* v. *Raynor,* 30 *id.* 197, 206, 207. *Post* v. *Bank of Utica,* 7 *Hill,* 391. *Rexford* v. *Widger,* 2 *Comst.* 131. *Schermerhorn* v. *Talman,* 4 *Kern.* 127. *Chamberlain* v. *Dempsey,* 36 *N. Y. Rep.* 144, 149. *Draper* v. *Prescott,* 29 *Barb.* 401. *Murray* v. *Barney,* 34 *id.* 336.)

II. The proof is uncontradicted, that the transaction between Losee and the defendant was a *bona fide* business contract in the usual course of trade, between a commission merchant and his customer or consignor, and that the commission agreed upon between the parties was usual, reasonable and proper under the circumstances. The plaintiff called no witnesses to the agreement between Losee and Coe, except the defendant himself. He tells the details of the transactions throughout with clearness and candor, and demonstrates their entire fairness. Losee was not examined. The question of usury or no usury rests entirely on the defendant's testimony, and his action is justified by almost any commission house in New York. (*Valentine* v. *Conner,* 40 *N. Y. Rep.* 248. *Bullock* v. *Boyd, Hoff. Rep.* 294. *Thomas* v. *Murray,* 32 *N. Y. Rep.* 605, 612. *Trotter* v. *Curtis,* 19 *John.* 160. *Booth* v. *Swezey,* 4 *Seld.* 280. *Nourse* v. *Prime,* 7 *John. Ch.* 69. *Smith* v. *Marvin,* 27 *N. Y. Rep.* 137. *Thurston* v. *Cornell,* 38 *id.* 281. *Robbins* v. *Dillaye,* 2 *Keyes,* 506.)

III. The referee has adopted an absurd rule of damages as between the plaintiff Matthews and the defendant. Granting, for the argument, that the plaintiff may maintain the action at all, and that a case of usurious agreement is made out, the penalty imposed by the referee goes far beyond the severest condemnation of the statute against usury. The assignor and borrower, Losee, had received $60,000 of the defendant's money upon the security of these warehouse receipts and this corn, which latter upon

a sale thereof with the consent of all the parties, did not realize that amount by some $12,000; and his assignee, according to the report of the learned referee, not only receives the amount of all the alleged usurious advances and interest and commissions and charges connected with the corn security, but a clear additional profit of over forty thousand dollars. The corn was never, in the hands of the defendant, worth the advances in the pocket of the borrower. It was sold at a loss to the lender, of $12,000, with full consent of all the parties to the action, and yet by virtue of the alleged taint of usury, the assignee of the borrower takes from the defendant not only his advances, but the highest market price of the corn down to the time of the trial. The punishment of the defendant for lending $60,000 upon an usurious agreement is by this decision to forfeit not only his $60,000, and the $12,000 loss on the sale of this corn, but $40,000 in addition, besides his time, services and expenses for insurance, watching the market, care, keeping and selling. It cannot be necessary to cite authorities to demonstrate to this court the great mistake of the referee upon this point of damages. There certainly can be no analogy between this case and those where a party sues for conversion of a chattel by the defendant without right, and in the absence of any agreement between the parties. (*Burt* v. *Dutcher,* 34 *N. Y. Rep.* 495. *Scott* v. *Rogers,* 31 *id.* 676. *Romaine* v. *Van Allen,* 26 *id.* 309. *Leslie* v. *Hoffman,* 1 *Edm. R.* 475. *Ward* v. *Benson,* 31 *How. Pr.* 411. *Barton* v. *Fisk,* 30 *N. Y. Rep.* 166.)

IV. If the court should agree with the referee, that the assignment by Losee to Matthews for the consideration of old, desperate and doubtful debts, operated to convey to Matthews all of Losee's "interest in the warehouse receipts held by Coe," Matthews, as such assignee, could not recover the warehouse receipts, or their value, from Coe, without tender and payment of Coe's advances on account thereof. Matthews alleges, but nowhere proves, a tender

of $60,000 to Coe.  The defendant, in his answer, admits a tender of $60,000, and a demand of a return of the receipts after the corn had been sold by consent of all parties, and the receipts surrendered.  And yet the referee finds the fact of a tender, and makes no allowance in favor of the defendant, as against Matthews, for one cent of the $60,000. The formal fact of tender after the sale of the corn, and a demand for the receipts, which the action of all the parties had rendered it impossible to comply with, are sufficient to persuade the referee that the defendant must pay Matthews the entire $100,000, without any further reference to the equity of Coe to have allowance made for the $60,000 he had already paid, and which the referee seems to have dimly thought he might have at one time legally exacted from this plaintiff.  (*Beecher* v. *Ackerman*, 1 *Abb. Prac.*, *N. S.* 141.  14 *N. Y. Rep.* 93, 191.  24 *id.* 170–178.  5 *Seld.* 73.)

V.  The amended complaint of Losee, and the new complaint of Matthews are both defective (fatally) in not alleging an usurious agreement or intent, or the quantum of usury claimed.  The defendant insists that there is no warrant in law for this trover form of action to avoid securities alleged to be usurious, (the policy of which is illustrated by the mistakes of the referee in this case on the question of damages,) and also insists that if such a form is proper, the violation of the statute against usury must still be stated with the same accuracy and fullness as in other forms of action where usury is alleged.

VI.  The defendant claims a new trial, or a reversal of the judgment below upon the exceptions in the case, and upon each of such exceptions, whether to rulings at the trial, or to the findings of fact and law by the referee, to the same extent as if the same, as stated in the said case, are repeated at length in these points.  The exceptions to the findings of fact should be held well taken, because such findings in every case are without evidence and

Matthews *v.* Coe.

against evidence. The errors of the referee in his conclusions of law have been already pointed out.

*Wm. C. Traphagen,* for the respondent.

I. The main object of the parties, in making the contract, was to effect a loan of money, and the consignment was a mere cover; as the corn was purchased by Losee, put in store and attended to by him, and insured by him, and he alone personally responsible for charges of storage. Losee was not induced to enter into this agreement to secure the services of a factor; there was no difficulty in finding a broker or commission merchant who would sell for a commission of half a cent a bushel. Coe was out of business, and had plenty of means, which he was loaning out on grain as collateral security. Under these circumstances the parties came together; and the operation of this agreement was such that Losee paid at the rate of twenty-two per cent per annum for the money borrowed. It is evident that had Losee the means of paying for the corn himself, he would not have entered into this contract; and the presumption is conclusive, that Losee's sole object, in undertaking to pay the exorbitant rates exacted by the defendant, was to enable him to carry on his business. It is equally apparent, that the principal object of the defendant was to furnish Losee money; and his motive for doing so was to secure an extraordinary and illegal compensation for his advance.

II. The substance of the transaction is to be regarded, rather than the expression in the instrument. (*Ord on Usury,* 38, 84, 85. *Dunham* v. *Dey,* 13 *John.* 40. *Dunham* v. *Gould,* 16 *id.* 367.)

III. When the person advancing money is entitled by the contract to the repayment of the money advanced, at all events, and stipulates for some advantage beyond the legal interest, the contract is usurious. (*Morse* v. *Wilson,*

4 *T. R.* 353, 356. *Barnard* v. *Young*, 17 *Vesey*, 44. *White* v. *Wright*, 3 *Barn. & Cress.* 273. *Cleveland* v. *Loder*, 7 *Paige Ch.* 557, 559. *Colton* v. *Dunham*, 2 *id.* 267. *Bank of Salina* v. *Alvord*, 31 *N. Y. Rep.* 473. *Newell* v. *Doty*, 33 *id.* 83.)

IV. This case should not be confounded with the ordinary case of a commission merchant accepting the drafts of his consignor drawn against the goods consigned. In such a case, it is intended that the factor should be in funds from the sale of the goods to meet the drafts of his consignor (drawn against the goods consigned) at their maturity. (*Harvey* v. *Archbold*, 3 *Barn. & Cress.* 203.)

V. There is no conceivable reason why the defendant should receive this two and a half per cent, other than as compensation for his advance. It was not to be paid as compensation for purchasing—for he never purchased—the purchases were made by Losee. It was not as compensation for selling, for he never sold or offered to sell. It was not for caring for the corn, for all the testimony is to the effect that Losee attended to the corn himself, had it insured, and paid the insurance out of the money advanced.

VI. The charge of two and a half per cent for advancing, was a profit imposed by the defendant upon the necessities of Losee, and was usurious and unlawful, although the transaction was made to assume the disguise of a commission for selling. (*Bank of U. S.* v. *Owens*, 2 *Peters*, 538. *Chitty on Cont.* 603, 611. *Ord on Usury*, 38.) A loan or forbearance of money, goods or things in action, being substantially the object of the parties, the agreement of Losee to pay, and of the defendant to receive commissions equal to fifteen per cent per year, in addition to the legal interest, is a cover for exacting illegal interest, and renders the entire contract, and all transactions under it, illegal and void. (*Dry Dock Bank* v. *Am. Life Ins. Co.*, 3 *N. Y.*

Matthews *v.* Coe.

*Rep.* 344, 359. *Steele* v. *Whipple,* 21 *Wend.* 104. *Dunham* v. *Gould,* 16 *John.* 367. 1 *Story's Eq.* § 301. *Fanning* v. *Dunham,* 5 *John. Ch.* 142–4. *Schroeppel* v. *Corning,* 5 *Denio,* 236. 6 *N. Y. Rep.* 107.)

VII. An usurious security is void, not only against the borrower, but also all persons who claim title under them, to the parties intended to be affected. (*Ord on Usury,* 131. *Bullard* v. *Raynor,* 30 *N. Y. Rep.* 200. *Williams* v. *Tilt,* 36 *id.* 319, 325. *Comyn on Usury,* 169.)

VIII. The defendant having voluntarily put it out of his power to restore the pledge, by selling the corn and parting with the warehouse receipts, a tender of the money loaned, and interest, was unnecessary. (*Dykers* v. *Allen,* 7 *Hill,* 498.) (*a.*) A pledgee cannot sell the pledge, without first demanding payment of the debt from the pledgor. A waiver of notice of sale is not a waiver of demand. (*Wilson* v. *Little,* 2 *N. Y. Rep.* 443.) (*b.*) The sale must be at public auction, and notice of time and place of sale must be given to pledgor. (*Wheeler* v. *Newbould,* 16 *N. Y. Rep.* 392. (*c.*) Where notice to redeem cannot be given to the pledgor personally, resort must be had to judicial proceedings. (12 *John.* 146.)

IX. The evidence warranted the finding of fact by the referee, that the entire transaction was usurious in its inception; and, even if this was doubtful, his finding will be sustained. (*Rice* v. *Willing,* 5 *Wend.* 595. *Mansfield* v. *Wheeler,* 23 *id.* 79.) Custom or usage will not be received to sanction usury. (2 *Cowen,* 664, 678. *Dunham* v. *Dey,* 13 *John.* 40. *Dunham* v. *Gould,* 16 *id.* 374. *Markham* v. *Jaudon,* 41 *N. Y. Rep.*)

X. A right of action for a wrongful taking and conversion of personal property is assignable, and under the provisions of the Code an assignee can recover in his own name. (*McKee* v. *Judd,* 2 *Kern.* 622. *Smith* v. *N. Y. and N. H. Railroad Co.,* 28 *Barb.* 607. *Bullard* v. *Raynor,*

---

Matthews *v.* Coe.

---

30 *N. Y. Rep.* 200.    2 *R. S. p.* 690, § 1, *art.* 1, *tit.* 3, *4th ed.* Haight v. *Hayt,* 19 *N. Y. Rep.* 467.    *Post* v. *Dart,* 8 *Paige,* 640.    *Mason* v. *Lord,* 40 *N. Y. Rep.* 487.    *Palen* v. *Johnson,* 46 *Barb.* 22.    *Meech* v. *Stoner,* 19 *N. Y. Rep.* 26.)

XI. In an action to recover damages for an unlawful conversion of the plaintiff's property, the rule of damages is, the highest value of the property between the act of conversion and the day of trial. (*Wilson* v. *Mathews,* 24 *Barb.* 295.    *Romaine* v. *Van Allen,* 26 *N. Y. Rep.* 309. *Burt* v. *Dutcher,* 34 *id.* 493.    *Markham* v. *Jaudon,* 41 *id.*)

XII. Upon questions of fact the verdict of a jury will not be disturbed, unless clearly and palpably wrong, and when a cause is tried by a judge or referee without a jury, the same rules apply. (*Mann* v. *Witbeck,* 17 *Barb.* 388. *Gilbert* v. *Luce,* 11 *Barb.* 91.)

*By the Court,* GEO. G. BARNARD, J.    I have examined this case with care, and am satisfied that the referee was correct in his finding that the warehouse receipts for the corn in question were pledged by Losee to Coe for a loan of money at a usurious rate of interest, and that the form of a consignment to Coe, of the corn covered by the warehouse receipts, was intended as a cover for the taking of the usurious interest.    But the appellant assigns two reasons why the respondent cannot recover:

1st. Because he is not a borrower, and therefore cannot avail himself of the usury between Coe and Losee.

2d. Because he consented to the sale of the corn.

The first proposition is clearly not maintainable.    For before the assignment to Matthews, Losee had commenced his action against Coe for the recovery of the warehouse receipts, and claimed that they should be returned to him freed from any claim on the part of Coe for the money advanced upon the usurious agreement; and it was the warehouse receipts, thus discharged of any claim, which Losee

assigned to Matthews, and for the conversion of which this suit was brought. The court, in *Bullard* v. *Raynor*, (30 *N. Y. Rep.* 200,) said: " No rule of law is better settled than that the purchaser of property charged with a usurious lien or claim can allege the usury and defeat the claim when the purchaser sold discharged of such usurious lien." 2d. I do not find any evidence of consent from Losee while he owned the corn, nor from Matthews to Coe while he owned it, for the sale thereof; and if there were, the referee must have found, from all the evidence, the contrary, to have arrived at his conclusions. (29 *N. Y. Rep.* 666.) The two orders on the warehousemen, which Coe claims as such consent, cannot by any possibility be so construed. On the 20th of April the form of the original action had been changed, and the plaintiff claimed damages for the unlawful conversion of the property by Coe; and when Coe applied to him to withdraw the orders previously given to the warehousemen "not to deliver the corn," he did so, he says himself, to save Coe the necessity of indemnifying the warehousemen.

The plaintiff having elected to pursue his action in trover, he could no longer restrain Coe in the disposition of the corn.

The only question remaining is as to the amount of damages. The Court of Appeals has so repeatedly stated the rule in this State to be the highest price at which the article converted sold for, from the time of the conversion to the time of trial, that it is no longer an open question, and the referee was clearly right in the measure of damages applied by him to this case. The question of damages has long been a troublesome one, and I think it better that we should adhere to that rule, which has been finally adopted, as it has the merit of being perfectly certain, and in the great majority of cases just. The rule here adopted by the referee was approved and adopted in the case of

*Wilson* v. *Mathews*, (24 *Barb.* 295,) which was also for a conversion of grain, and approved and sustained by the Court of Appeals in the case of *Burt* v. *Dutcher*, (34 *N. Y. Rep.* 495,) which was for a conversion of hops.

The judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, April 4, 1870. *Ingraham, Cardozo* and *Geo. G. Barnard*, Justices.]